## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES LOUIS JORDAN,** | : | **Civil No. 1:21-cv-01975** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **KILOLO KIJAKAZI,** | : | |
| **Acting Commissioner of Social Security,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.   Introduction

For Administrative Law Judges (ALJs), Social Security disability determinations frequently entail an informed assessment of competing medical opinions coupled with an evaluation of a claimant's subjective complaints. Once the ALJ completes this task, on appeal it is the duty and responsibility of the district court to review these ALJ findings, judging the findings against a deferential standard of review which simply asks whether the ALJ's decision is supported by substantial evidence in the record, see 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012), a quantum of proof which "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487

U.S. 552, 565 (1988). This informed assessment by the ALJ, however, must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Thus, the Social Security Act and case law construing the Act place a duty of articulation upon ALJ's which is essential to informed evaluation of disability determinations on appeal.

We are reminded of these guiding tenets of Social Security practice as we turn to this case. In the instant case, an ALJ denied James Jordan's disability application, which alleged disability beginning on July 27, 2019. However, in reaching this result the ALJ did not include a provision in the residual functional capacity (RFC) to account for Jordan's use of a cane to ambulate because the ALJ found the cane was not medically necessary according to SSR 96–9p. The ALJ reached this conclusion without adequately addressing the evidence which indicated that some use of a cane was medically necessary for Jordan. Thus, we conclude that the ALJ failed sufficiently articulate this finding in light of a body of countervailing evidence regarding Jordan's use of a cane. Specifically, in January 2020, Jordan was referred for a replacement single point cane by his treating doctor. (Tr. 611). The record also reveals that in 2015 Jordan was prescribed a cane. (Tr. 203). Additionally, the record is replete with references to Jordan's use of a cane to ambulate and his antalgic gait. (Tr. 628, 629, 646, 680-724, 754, 755, 770, 824, 843).

In our view, given the evidence which reveals that Jordan was referred for a cane and routinely used that cane, more is needed here to justify the ALJ's decision which fashioned an RFC for Jordan that wholly discounted his use of a cane and instead required him "to perform light work as defined in 20 CFR 404.1567(b) except he may occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, but must never climb ladders, ropes, or scaffolds . . ." (Tr. 22). Indeed, in similar circumstances we have held that when an ALJ crafts an RFC for a claimant that includes significant mobility requirements, without accounting for their need for an assistive device, a remand is warranted. See Dieter v. Saul, No. 1:19-CV-1081, 2020 WL 2839087, at *9 (M.D. Pa. June 1, 2020). Accordingly, for the reasons set forth below, we will remand this case for further consideration by the Commissioner.

## II.   **Factual Background and Procedural History**

Because we have determined that a remand is necessary due to the failure to sufficiently articulate a rationale for why Jordan's use of a cane was not accounted for in the RFC, we will focus upon this issue when assessing the record.

On August 20, 2019, Jordan applied for disability and supplemental security insurance benefits pursuant to Title II of the Social Security Act, alleging an onset of disability beginning on July 27, 2019. (Tr. 16). Jordan was 49 years old at the time of the alleged onset of his disability. (Tr. 31). Jordan is no longer in the younger individual age category and is now in the closely approaching advanced age

category. (Id.) Jordan had prior employment as a janitor, electrician helper, and a warehouse supervisor. (Id.)

At a disability hearing conducted on January 14, 2021, Jordan testified concerning his use of a cane. (Tr. 49-50). Jordan explained he uses a cane for "balance and stability" and uses a cane in his home. (Tr. 49). Jordan also explained he started using a cane when he moved into his home approximately four years prior to when the hearing was held. (Id.) Jordan testified that he did not use a cane at work. (Tr. 49-50). Jordan stopped working as a janitor in July 2019. (Tr. 180).

The records from the Department of Veterans Affairs, specifically the Lebanon VA Medical Center, indicate that Jordan can manage toileting, grooming, and self-feeding on his own, but his wife helps him into and out of the shower, washes his back, and sometimes helps him with getting dressed. (Tr. 829, 843). These treatment notes indicate Jordan ambulates using a single point cane and can manage the steps into his family room by holding onto both rails. (Tr. 829).

In Jordan's Function Report, he stated he needs help getting in and out of the bathtub and going up and down stairs. (Tr. 198). Jordan explained he takes breaks when doing tasks such as washing dishes and performing light yard work to relieve himself of the pain from moving too much. (Tr. 199). He also explained that when he and his wife go grocery shopping, he normally remains in the car while she goes into the store. (Tr. 200).

4

Dr. Bowers, a treating source, referred Jordan to Dr. Williams for evaluation and treatment for his low back pain. Dr. Williams' treatment records indicate she treated Jordan for a period of approximately seven or so months. (Tr. 680-724). During this time Dr. Williams consistently referenced Jordan's use of a cane and his antalgic gate. (Id.) Jordan was treated by Dr. Williams from the end of January 2020 until September 2020. (Id.) Also, on January 27, 2020, Dr. Williams noted that Jordan's "pain level increased with standing, prolonged sitting, or bending." (Tr. 677).

Treatment notes from the Lebanon VA Medical Center also contain several references to Jordan's use of a cane, difficulty ambulating, and his antalgic gate. (Tr. 754, 755, 770, 824, 843). A treatment note entered on November 16, 2020, by a nurse practitioner-trainee at the Lebanon VA Medical Center indicates that Jordan "ambulated into the room using a cane and with great difficulty due to ongoing persistent low back pain that he is currently being seen by his PCP for." (Tr. 754). The nurse-practitioner-trainee also indicated Jordan has "acute onset of low back pain for several weeks, struggling to ambulate without use of cane, is followed by PCP for back pain[.]" (Tr. 755). Another progress note signed by a social worker on August 21, 2020, indicates that Jordan uses a cane when ambulating according to his spouse. A behavioral health care manager September 2, 2020, stated that Jordan "ambulates slowly with cane[.]" (Tr. 824). Additionally, on August 10, 2020, a nurse

practitioner noted Jordan walks with a cane. (Tr. 843). The records from the Lebanon VA Medical Center also contain a November 4, 2020, progress note from Dr. Bowers, a treating source, that indicates Jordan's gait was antalgic and he was using a cane. (Tr. 770).

Treatment notes from the Hetrick Center also reference Jordan's use of a cane. A treatment note from August 7, 2020 states the following: "Provocative: sitting, bending, walking lifting (he needs cane to walk)" (Tr. 628). Furter, the treatment note states that "[Jordan] has observed pain, altered gait and antalgia with some difficulty rising and walking to the treatment room and requires a cane to walk." (Tr. 629). Another treatment note, from The Hetrick Center from September 8, 2020 states that "[Jordan] still requires a cane to ambulate[.]" (Tr. 646).

Following Jordan's application for disability and supplemental security insurance benefits, the ALJ issued a decision denying Jordan's application on February 23, 2021. (Tr. 16-33). In that decision, the ALJ first concluded that Jordan had not engaged in substantial gainful activity since his alleged onset date of disability, July 27, 2019. (Tr. 18). Although, the ALJ noted he elected not to find substantial gainful activity despite that the record stated Jordan received $6,370 during the third quarter of 2019, exceeding the monthly substantial gainful activity threshold of $1,220 for 2019. (Id.) The ALJ explained that he forwent a finding of

substantial gainful activity for the purposes of expediency and to proceed with the sequential evaluation process in its entirety. (Id.)

At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Jordan had the following severe impairments: degenerative disc disease of the lumbosacral spine, obesity, diabetes mellitus, posttraumatic stress disorder, depressive disorder, and anxiety disorder. (Id.) At Step 3 the ALJ determined that Jordan's impairments or combination of impairments did not meet or medically equal one of the listed impairments. (Tr. 20).

Between Steps 3 and 4 the ALJ concluded that Jordan retained the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he may occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, but must never climb ladders, ropes, or scaffolds or be exposed to hazards such as heights or moving machinery. The claimant retains the mental capacity to perform routine, repetitive tasks in an environment with only occasional changes in the work setting, but no production line type work. The claimant may occasionally interact with the public, coworkers, and supervisors.

(Tr. 22).

This RFC—which called for Jordan to perform light work as defined by 20 CFR 404.1567(b) and occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs—made no provision whatsoever for Jordan's medical referral for a cane. Indeed, in January 2020, Jordan was referred for a replacement single point

cane by his treating doctor, Dr. Bowers. (Tr. 611). Also, according to the record Jordan was prescribed a cane in 2015 prior to his alleged onset date of disability. (Tr. 203).

The ALJ justified this decision to completely discount Jordan's documented use of a cane in the RFC by asserting that "the record fails to establish that the claimant's use of a cane is medically necessary." (Tr. 28). In crafting this RFC, the ALJ considered medical opinions as well as Jordan's activities of daily living.

On this score, the ALJ found the opinion of Dr. Kneifati, a consultative examiner, not persuasive. (Tr. 30-31). Jordan was referred to Dr. Kneifati by the Bureau of Disability Determination for an internal medicine examination in December 2019. (Tr. 512). Dr. Kneifati determined that Jordan could sit for four hours, stand for three hours, and walk for two hours in an eight-hour work day. (Tr. 520). Dr. Kneifati found that Jordan could frequently crawl and occasionally balance, stoop, kneel, crouch, operate foot controls and climb stairs, ramps, ladders, ropes, or scaffold. (Tr. 522). Notably, Dr. Kneifati explained that Jordan did not bring an assistive device to the exam and had a normal gait. (Tr. 514). Dr. Kneifati marked that Jordan does not require the use of a cane to ambulate. (Tr. 520). Additionally, Dr. Kneifati stated that Jordan could not stand on his toes and heels or walk on his toes and heels and noted that Jordan's squat was limited to twenty percent. (Tr. 514).

The ALJ found Dr. Kneifati's opinion overly restrictive. (Tr. 30). The ALJ explained that Jordan maintained his strength and sensation during the relevant period and the restrictive limitations "are not supported by the record, which notes that the claimant is able to perform his activities of daily living, including caring for his personal care needs and performing house and yard work." (Tr. 31).

The ALJ also found Dr. Bowers' treating source opinion not persuasive. (Tr. 29). In Dr. Bowers' medical source statement from December, 2020, he marked that Jordan can stand/walk for one hour in an eight hour work day and can sit for six hours in an eight hour work day. (Tr. 927). Additionally, Dr. Bowers' marked that Jordan can lift and carry up to five pounds and that Jordan experiences approximately four or more "bad days" per month that would prevent him from attending work or completing his shift. (Tr. 29). Dr. Bowers' indicated that Jordan requires the use of a cane for ambulation. (Tr. 927). The ALJ rejected this finding specifically because he concluded that the record does not demonstrate Jordan's use of a cane is medically necessary. (Tr. 29). The ALJ also explained that he found the Bowers' opinion unpersuasive because the record demonstrates that Jordan maintained his strength and sensation during the relevant period and that he can perform his activities of daily living. (Tr. 30).

Notably, the ALJ found both Dr. Kneifati and Dr. Bowers' opinions not persuasive in part because the record indicates Jordan can perform his activities of

daily living. However, this assessment of Jordan's self-reported activities of daily living fails to account for his reported frequent use of cane and there are indications in the record that Jordan struggles to perform his activities of daily living and needs assistance with certain activities. (Tr. 198, 199, 200, 829, 843). Further, by rejecting both the opinion of Dr. Kneifati and the judgment of the treating source Dr. Bowers the ALJ seemingly discounted every medical opinions which assessed the medical necessity of a cane for Jordan.

After explaining his reasoning behind the RFC, the ALJ then found that Jordan could not perform his past work but retained the capacity to perform other jobs that existed in significant numbers in the national economy. (Tr. 31-32). Having reached these conclusions, the ALJ determined that Jordan had not met the demanding showing necessary to sustain his claim for benefits and denied his claim. (Tr. 32-33).

This appeal followed. (Doc. 1). On appeal, Jordan challenges the adequacy of the ALJ's decision arguing, in part, that the ALJ failed to account for his use of a cane in the RFC. We find that the ALJ's analysis of this issue is deficient because the ALJ has not met his burden of articulation regarding why there was no provision for Jordan's documented and medically referred use of a cane. On these facts, as discussed below, we conclude that the ALJ's decision is not supported by substantial

evidence, and we will remand this case for further consideration and evaluation of the medical evidence as it pertains to this issue.

## III.   Discussion

### A.   Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n,

383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that [she] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote

a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employy

particular "magic" words: "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

### B.   <u>Initial Burdens of Proof, Persuasion, and Articulation for the ALJ</u>

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); <u>see also</u> 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed

to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett, 220 F.3d at 121 (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018); Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017)..

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have

followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F.Supp.2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here, where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In

this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns, 312 F.3d 113; see also Rathbun, 2018 WL 1514383, at *6; Metzger, 2017 WL 1483328, at *5.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate

which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

### C.   <u>Duty of Articulation – Claimant's Use of a Cane</u>

Cases considering a claimant's use of a cane or assistive device to ambulate aptly illustrate the importance of the ALJ's duty to clearly articulate the rationale for a decision denying disability benefits. Case law and Social Security regulations both recognize that a claimant's need to use an assistive device to ambulate can dramatically and adversely affect the ability to perform work on a sustained basis. Accordingly, in certain instances, the use of a cane to ambulate can be outcome determinative in a Social Security appeal.

At the outset, in order to rely upon evidence regarding the use of a cane to sustain a disability claim, the assistive device must be medically necessary.

> " 'To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed [.]' Social Security Ruling 96–9p." Howze v. Barnhart, 53 Fed.Appx. 218, 222 (3d Cir. 2002). In short
>
>> Social Security regulations provide that an ALJ will not accommodate the use of a cane unless the claimant first provides "medical documentation establishing the need for a hand-held assistive device to aid in walking or

> standing, and describing the circumstances for which it is needed[.]" SSR 96–9p. Absent such documentation, an ALJ need not accommodate the use of a cane in a residual functional capacity assessment, even if the claimant was prescribed a cane by a doctor. <u>See</u>, <u>Howze v. Barnhart</u>, 53 Fed.Appx. 218, 222 (3d Cir. 2002).

<u>Williams v. Colvin</u>, No. 3:13-CV-2158, 2014 WL 4918469, at *10 (M.D. Pa. Sept. 30, 2014).

<u>Phillips v. Colvin</u>, No. 1:16-CV-1033, 2017 WL 3820973, at *9 (M.D. Pa. Aug. 16, 2017), <u>report and recommendation adopted sub nom.</u> <u>Philips v. Colvin</u>, No. 1:16-CV-1033, 2017 WL 3780138 (M.D. Pa. Aug. 31, 2017).

However, if the claimant makes this threshold showing of medical necessity, then it is incumbent upon the ALJ to directly "address the evidence concerning Plaintiff's use of" the assistive device. <u>Steward v. Comm'r of Soc. Sec.</u>, No. CIV.A 08-1741, 2009 WL 1783533, at *5 (W.D. Pa. June 23, 2009). Moreover, the failure to do so may require a remand. <u>Id.</u> Likewise, when the evidence indicates that the use of a cane is medically required and a vocational expert testifies that the plaintiff's use of an assistive device would render her unable to work, it is error for the ALJ to fail to set forth the reasons for rejecting this expert testimony, and the case should be remanded. <u>Altomare v. Barnhart</u>, 394 F. Supp. 2d 678, 682 (E.D. Pa. 2005). In short, where substantial evidence indicates that there is a medical need for a claimant to use a cane or assistive device, and a vocational expert testified that such use significantly erodes the employment base for a claimant, the failure to adequately

address these issues constitutes a failure of articulation by the ALJ warranting a remand. See e.g., Graver v. Colvin, No. 3:13CV1811, 2014 WL 1746976, at *5 (M.D. Pa. May 1, 2014); Butler v. Astrue, No. CIV.A. 11-376, 2012 WL 1252758, at *7 (W.D. Pa. Apr. 13, 2012). These principles which recognize the limiting effects of a an assistive on employment apply with particular force in a case such as this when an ALJ crafts an RFC for a claimant that includes significant mobility requirements, without accounting for her need for a cane. See Dieter, 2020 WL 2839087, at *9.  In such instances a remand may be necessary.

D. **Legal Benchmarks for the ALJ's Assessment of Medical Opinion Evidence**

The plaintiff filed this disability application in August of 2019 after a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

> Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015);

> Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016). Finally, where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings, 129 F.Supp.3d at 214–15.

It is against these benchmarks that we assess the instant case.

**E.  This Case Will Be Remanded.**

After consideration, we will remand this case because the ALJ failed to fully articulate why Jordan's use of a cane was not accounted for in the RFC, despite the body of countervailing evidence in the record. We reach this conclusion mindful of the fact that Social Security appeals are judged by a deferential standard of review, but the courts have imposed a clear burden of articulation upon an ALJ in order to facilitate this review. At a minimum, this articulation responsibility means that the ALJ's decision must provide a logical nexus between any factual findings and ultimate functional capacity and disability determinations. This principle applies with particular force to cases involving claimants who may have a medical need for a cane or other assistive device. Because the use of cane to ambulate may

significantly undermine the ability to work, courts have held that where a claimant has been deemed by a physician to medically require a cane, and a vocational expert has opined that use of the assistive device in combination with other impairments could render the claimant unemployable, the ALJ must make specific, well-articulated findings in order to deny the claim for benefits. Failure to fully address this issue may compel a remand of the case for further consideration by the Commissioner.

So it is here.

In this case the ALJ asserted that: "the record fails to establish that the claimant's use of a cane is medically necessary." (Tr. 28). "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p. The ALJ acknowledged that in 2015, prior to Jordan's alleged onset date, he was prescribed a cane. (Id.) The ALJ also acknowledged that in January 2020 Jordan received a referral for a cane by his treating doctor, Dr. Bowers. (Id.) In support of the ALJ's assertion that the record did not establish Jordan's use a cane is medically necessary he explained:

> At the time of hearing, the claimant noted that he did not use a cane while working on the job (Hearing Testimony). In addition, the claimant appeared at a consultative examination in December 2019, where it was noted that he did not present or ambulate with an assistive

device (Exhibit 3F). Moreover, treatment notes from that time, and generally during the relevant period, indicate the claimant maintained his strength and sensation (Exhibit 3F; 9F). Notably, x-ray imaging from the time revealed that the claimant's right knee had no evidence of an acute fracture, dislocation, destructive bony lesion, or joint space abnormality to warrant a determination of a medically necessary reason for the use of a cane (Exhibit 3F).

(Id.)

The ALJ relied on Jordan's hearing testimony that he did not use a cane while working but failed to acknowledge that Jordan stopped working in July 2019, two years prior to the hearing. (Tr. 33, 180). The ALJ's reliance on this testimony, moreover, does not account for later medical developments, which showed that Jordan frequently used a cane for ambulation. Additionally, at the hearing Jordan testified he uses a cane for balance and stability. (Tr. 49).

The ALJ further relied on Jordan's attendance at a consultative examination with Dr. Kneifati in December 2019, during which he did not use a cane or assistive device to ambulate. We acknowledge this is at odds with other evidence in the record, but the ALJ failed to account for the other countervailing evidence regarding Jordan's frequent use of a cane. For example, the records from the Department of Veterans Affairs, specifically the Lebanon VA Medical Center, are replete with references to Jordan's use of a cane. (Tr. 754, 755, 770, 824, 843). The ALJ references these treatment notes in support of his determination that Jordan's use of cane is not medically necessary because Jordan "maintained his strength and

sensation." (Tr. 28). Curiously, the ALJ failed to mention these references to Jordan's use of a cane, all of which were made after the December 2019 consultative examination with Dr. Kneifati.

Additionally, treatment notes from The Hetrick Center contain references to Jordan's use of a cane, antalgic gait, and difficulty walking. (Tr. 628, 629, 646). Also, the treatment records from Dr. Williams who treated Jordan for several months consistently reference Jordan's use of a cane at his appointments. (Tr. 680-724).

The ALJ's determination that Jordan's use of a cane was not medically necessary also turned upon the ALJ's characterization of the plaintiff's activities of daily living but that characterization did not adequately address this evidence. In the paragraph after the ALJ's explanation of why Jordan's use of a cane is not medically necessary, the ALJ explains the following:

> Similarly, the claimant activities of daily living suggest that his conditions are not as debilitating as alleged. The claimant is able to care for his personal care needs, including his ability to dress, bathe, care for his hair, shave, feed himself, and use the bathroom (Exhibit 4E). He is also able to perform house and yard work, including cleaning, washing dishes, making small repairs, and performing light yardwork (Exhibit 4E).

(Tr. 28).

However, it appears that the ALJ may have overstated Jordan's ability to perform these activities of daily living. For example, according to Exhibit 4E, Jordan's Function Report (Tr. 196-204), Jordan cannot bathe without assistance. (Tr.

198). Under the personal care section of the report, Jordan indicated that he "need[s] help getting in and out of bathtub" and "need[s] help going up and down stairs." (Id.) Jordan also indicated he is able to clean, wash dishes, conduct small repairs, and perform light yard work but stated that it takes him more time to do these things than in the past. (Tr. 199). He explained, "I have to take breaks to relieve myself from pain of moving around to much." (Id.) In addition, Jordan marked he shops for groceries but indicated that he and his wife usually go together but he stays in the car most of the time. (Tr. 200). Accordingly, the ALJ's reliance on Jordan's function report to conclude that Jordan can perform these activities of daily living without assistance is misplaced.

Additionally, there are treatment records that contradict the ALJ's characterization of Jordan's activities of daily living. For example, a caregiver program support note from August 21, 2020, contained in the VA Lebanon Medical Center records, explains that Jordan's spouse prepares his bath, helps Jordan maneuver into and out of the shower, and washes his back. (Tr. 843). The support note also states that some days Jordan needs help dressing himself. (Id.) Another progress note from September 2, 2020, indicated the following assistive devices were ordered by the VA: a tub transfer bench; hand held shower hose, dressing stick, reacher, wide sock aid, shoe horn, and a long handled sponge. (Tr. 828).   The

progress note from September 2, 2020, also contains the following description of

Jordan's activities of daily living:

> Veteran reports sitting on the tub ledge to take a shower and wife
> provides assist with bathing. His wife also assists with LB dressing
> while sitting on bed. Veteran reports managing toileting, grooming,
> self-feeding on his own. He ambulates using SPC and reports being able
> to manage the steps to access the family room, holding onto both rails.
> His wife reports one recent fall which occurred last month in the middle
> of the night when ambulating to the bathroom. She reports providing
> supervision when he ambulates on days when he feels like his legs
> might give out and provides increased assist for bathing/dressing on
> "rough days" when he has increased back pain.

(Tr. 829). Accordingly, given the ALJ's failure to reconcile these treatment records

with his finding that a cane was not medically necessary, we cannot conclude that

the ALJ's finding that a cane was not medically necessary is supported by substantial

evidence.

The ALJ's failure to fully articulate his rationale for finding Jordan's use of a

cane not medically necessary was then heightened by the ALJ's treatment of Dr.

Bowers' medical opinion. Indeed, we find that the ALJ's treatment of this treating

physician's opinion is not supported by substantial evidence. In Dr. Bowers' medical

source statement from December 18, 2020, he marked that Jordan requires a cane

for ambulation and/or balance while standing. (Tr. 927). Additionally, Dr. Bowers

marked that Jordan can stand/walk for one hour in an eight-hour workday and can

sit for six hours in an eight-hour workday. (Id.) Additionally, Dr. Bowers opined that

Jordan can only lift and carry up to five pounds. (Id.)

29

The ALJ relied on Jordan's ability to perform activities of daily living to discredit Bowers' opinion. (Tr. 30). However, as we discussed above, the record indicated that Jordan struggled to perform activities of daily living and needed significant assistance with certain activities like bathing, and dressing. (Tr. 198, 199, 200, 829, 843). Also, the ALJ relied on Jordan maintaining his strength and sensation but did not discuss the many references in the treatment records regarding Jordan's use of a cane and antalgic gait. (Tr. 30, 628, 629, 646, 680-724, 754, 755, 770, 824, 843). Further, the ALJ dismissed this medical opinion because Dr. Bowers indicated that Jordan requires a cane, however, the ALJ did not sufficiently articulate why the cane was not medically necessary. Therefore, we find that the ALJ has not adequately articulated this reason for rejecting Dr. Bowers' opinion proper.

The ALJ characterized this opinion as only a checklist of limitations without explanations, and we acknowledge that form reports that only require a doctor to check a box may not be as strong as evidence as a thorough written report. Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986). However, in a case such as this where substantial clinical evidence underscored Jordan's need to use a  cane to ambulate, we do not find that Dr. Bowers' use of a check box form medical source statement raises an issue of reliability or weakens his opinion as Dr. Bowers had treated Jordan on a recurring basis prior to completing the medical source statement.

Given these ambiguities and inconsistencies in the ALJ's consideration of Jordan's need to use a cane, more is needed here to sustain the Commissioner's denial of this claim. It is axiomatic that the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. This means that there must be a logical nexus between the ALJ's factual findings and legal conclusion. That logical bridge is missing here, the ALJ's burden of articulation is not met. Therefore, this matter will be remanded for further consideration by the Commissioner.

Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, this task should remain the duty and province of the ALJ on remand. Further, having found that a remand is justified on these grounds, we have not addressed any other claimed errors because the ALJ may in the first instance address them upon remand. See McMillan v. Comm'r of Soc. Sec., No. 16-313, 2018 WL 6617841, at *4 (D.N.J. Dec. 18, 2018) (holding the same in finding that a remand was appropriate because the ALJ failed to properly consider the plaintiff's severe obesity impairment at the third step and the fifth step, and thus the Court "need not consider Plaintiff's other arguments at this juncture"); see also Lawrence v. Colvin, No. 15-2851, 2016 WL 1644622, at *10 (D.N.J. Apr. 26, 2016) (holding the same in finding that a remand was

appropriate because the ALJ failed to properly consider one of the claimant's disabilities, and thus the ALJ would be required to engage in an entirely new evaluation concerning the claimant's other alleged severe disabilities).

## IV.   <u>**Conclusion**</u>

Accordingly, for the foregoing reasons, IT IS ORDERED that the final decision of the Commissioner denying these claims is vacated, and this case is remanded to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

<u>/s/ *Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

Dated: March 23, 2023